## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE:<br>**WILLIAM M. SOOTS, JR.**<br>*aka* Billy Soots<br><br>**DEBTOR** | **CASE NO.  13-00286-8-DMW**<br>**CHAPTER 11** |

### MOTION FOR RELIEF FROM AUTOMATIC STAY OR IN THE ALTERNATIVE ADEQUATE PROTECTION
### {No Protest Motion Pursuant to 11 U.S.C. § 362}

**COMES NOW** SunTrust Bank (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) on the following grounds:

1.      On January 14, 2013, the Debtor, William M. Soots, Jr., filed a petition with the Bankruptcy Court for the Eastern District of North Carolina under Chapter 11 of Title 11 of the United States Code.

2.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

3.      The Debtor holds title to the real property (hereinafter "Collateral") described in that Deed of Trust recorded in the Brunswick County Register of Deeds in Book 2531 at Page 0828 and recorded on January 2, 2007 (hereinafter "Deed of Trust") with an address of 301 West Yacht Drive, Oak Island, North Carolina 28465.  A copy of the Deed of Trust is attached hereto and is incorporated herein as Exhibit "A".

4.      SunTrust Mortgage, Inc. services the loan on the property referenced in this Motion for Relief. In the event the automatic stay is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of SunTrust Bank.  Movant is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory Note (hereinafter "Note", a copy of which is attached hereto and incorporated as Exhibit "B"). The Note is either made payable to Movant or has been duly endorsed. The Note is secured by the Deed of Trust from the Debtor in the original principal amount of $440,000.00 and dated December 22, 2006.

5.      Upon information and belief, the approximate payoff due and owing to Movant as of March 31, 2015 is $230,851.62.

6.      The Debtor has defaulted in the mortgage payments to be made pursuant to the terms of the confirmed chapter 11 plan.  Upon information and belief, the amount of default, exclusive of fees and costs, is as follows:

| | | | | |
|---|---|---|---|---|
| 2 | payments @<br>(2/15 - 3/15) | $ | 1,621.16 | $       3,242.32 |
| | Less Suspense Amount: | | | $  -1,159.19 |
| | **Total Delinquency** | | | **$        2,083.13** |

7.      As a result, Movant lacks adequate protection of its interest in the Collateral.  By virtue of such lack of protection, good cause exists to lift the automatic stay imposed hereunder.  Otherwise, Movant will suffer irreparable harm with respect to Movant's interest in the Collateral.

8.      Pursuant to §362(e), Movant has noticed any interested party that it must file and serve any response, including an objection, within fourteen (14) days from service of the Notice of Opportunity for Hearing attached hereto and incorporated herein by reference, or to otherwise appear at the time and location stated therein to object to this motion.  In the event that an interested party does not request a hearing, the Court may decide the matter on the record before it.

**WHEREFORE,** Movant prays the Court as follows:

1.      Modify the Automatic Stay of Section 362(a) of the Bankruptcy Code to permit Movant to enforce its security interest in the Collateral.

2.      Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay.

3.      As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral.

4.      Movant specifically requests permission to communicate with the Debtor(s) and Debtor(s)' counsel to the extent necessary to comply with applicable nonbankruptcy law.

5.      Grant Movant reasonable costs and attorney fees incurred in connection with this proceeding; and,

6.      Grant Movant such other and further relief as the Court deems just and proper.

This 1st day of April, 2015.

/s/ Matthew L. Underwood
Sean M. Corcoran (N.C. Bar No. 33387)
Matthew L. Underwood (N.C. Bar No. 37106)
Daria A. Barrett (N.C. Bar No. 42188)
Attorneys for Movant
Brock & Scott, PLLC
5121 Parkway Plaza Blvd., Suite 300
Charlotte, NC 28217
Ph: (704) 369-0676
Fax: (704) 369-0760
bankruptcy@brockandscott.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| IN RE:<br>WILLIAM M. SOOTS, JR.<br>*aka* Billy Soots<br>**DEBTOR** | CASE NO.  13-00286-8-DMW<br>CHAPTER 11 |

**NOTICE OF MOTION**

**TO THE DEBTOR, DEBTOR'S ATTORNEY, TRUSTEE, AND ALL PARTIES IN INTEREST**

      **THIS NOTICE IS HEREBY GIVEN** of a Motion for Relief from Automatic Stay filed simultaneously herewith in the above-captioned case, a copy of which is attached hereto, and;

      **NOTICE IS FURTHER GIVEN** that this motion may be allowed pursuant to U.S.C. §362 provided no response and request for a hearing is made by the parties in interest in writing to the Clerk of Court within FOURTEEN (14) DAYS from the date of this notice, and;

      **NOTICE IS FURTHER GIVEN** that if a response and request for a hearing is filed by a party in interest named herein, in writing within the time indicated, a hearing will be conducted on the motion and response at a date and time to be later set by the Court and all parties will be notified accordingly.  If no response for a hearing is timely filed, the Court may rule on the Motion <u>ex-parte</u> without further notice.  Any party requesting a hearing shall appear at the hearing in support of such an objection or may be assessed with costs of Court.

This 1st day of April, 2015

                    Brock and Scott, PLLC

                    /s/ Matthew L. Underwood
                    Matthew L. Underwood
                    Attorney for Movant
                    Brock & Scott, PLLC
                    5121 Parkway Plaza Blvd., Suite 300
                    Charlotte, NC 28217
                    Ph: (704) 369-0676
                    Fax: (704) 369-0760
                    State Bar No.: 37106
                    bankruptcy@brockandscott.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:
**WILLIAM M. SOOTS, JR.**
*aka* **Billy Soots**
               **DEBTOR**

**CASE NO.  13-00286-8-DMW**
**CHAPTER 11**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY and the NOTICE OF MOTION in the above captioned case were this day served upon the below named persons by electronic means as permitted under the local rules or by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

William M. Soots, Jr.
4819 Port Loop Road
Southport, NC 28461

George M. Oliver
Post Office Box 1548
New Bern, NC 28563

Oliver Friesen Cheek, PLLC
PO Box 1548
New Bern, NC 28563

Clayton W. Cheek
PO Box 1548
218-C South Front Street
New Bern, NC 28563

Advanta Bk
Attn: Officer, Mc Agnt, Agnt
Po Box 844
Spring House, PA 19477

Bank Of America
Attn: Office Mg Agnt, Agnt
PO Box 982235
El Paso, TX 79998

Barclays Bank Delaware
Attn: Officer, Mg Agnt, Agnt
Po Box 1337
Philadelphia, PA 19101

BB&T
Attn: Officer, Mg Agnt, Agnt
PO Box 2306
Wilson, NC 27894

Brunswick Co Tax Collector
Attn: Manager or Agent
PO Box 269
Bolivia, NC 28422

Capital 1 Bank
Attn: Manager or Agent
Po Box 30285
Salt Lake City, UT 84130

Chase
Attn: Officer, Mg Agnt, Agnt
PO Box 15298
Wilmington, DE 19850

Dosher Memorial Hospital
Attn: Manager or Agent
924 Howe Street
Southport, NC 28461

First Citizens Bank
Attn: Officer, Mg Agnt, Agnt
PO Box 29514
Raleigh, NC 27626-0514

Suntrust Bank Atlanta
Attn: Officer, Mg Agnt, Agnt
Po Box 85092
Richmond, VA 23286

Suntrust Mortgage/cc 5
Attn: Officer, Mg Agnt, Agnt
1001 Seemes Ave, Rvw-7941
Richmond, VA 23286

Town of Oak Island
Attn: Manager or Agent
4601 E. Oak Island Drive
Oak Island, NC 28465

This 1st day of April, 2015.

Brock and Scott, PLLC
/s/ Jayne Parks
Jayne Parks
Brock & Scott, PLLC
5121 Parkway Plaza Blvd., Suite 300
Charlotte, NC 28217
Ph: (704) 369-0676
Fax: (704) 369-0760
bankruptcy@brockandscott.com



B2531 P0828    10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds    page 1 of 23

EXHIBIT A

DEED OF TRUST

RET Serra Law Firm
23 TOTAL 80 REV ___ TC# 2
REC# ___ CK AMT 80 CK# 5036
CASH ___ REF ___ BY JB

Return To: ROB SERRA
104 PRICE STREET
OAK ISLAND, NC 28465
Prepared By: STEPHANIE EVANS
SunTrust Mortgage, Inc.
2601 Iron Gate Drive, Ste 102
Wilmington, NC 28412 and
Robert Serra, Attorney

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    December 22, 2006    , together with all Riders to this document.

**(B) "Borrower"** is

William M. Soots (unmarried)

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is SunTrust Mortgage, Inc.

Lender is a Virginia Corporation
organized and existing under the laws of    the State of Virginia

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3034  1/01

VMP -6A(NC) (0510)

Page 1 of 15    Initials: WMS

VMP Mortgage Solutions, Inc. (800)521-7291



B2531 P0829    01-02-2008
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds    page 2 of 23

Lender's address is   901 Semmes Avenue, Richmond, VA 23224

**(D) "Trustee"** is Jackie Miller

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated      December 22, 2006      .
The Note states that Borrower owes Lender Four Hundred Forty Thousand and no/100

Dollars
(U.S. $ 440,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       January 1, 2037      .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C.  Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R.  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: UMLS

VMP®-6A(NC) (0510)                    Page 2 of 15                    Form 3034  1/01

B2501 P0630    10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds    page 3 of 23

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the

| Office of Records | of | Brunswick | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

BEING all of Lots 40 and 41, Block 204, Section 15, Tranquil Harbour, a section of Long Beach (now Oak Island), NC as shown on map recorded in Map Book 6, Page 67, Brunswick County Registry.

Parcel ID Number:                                    which currently has the address of
301 West Yacht Dr.                                                          [Street]
Southport
("Property Address"):               [City], North Carolina      28461      [Zip Code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: WMS

VMP-6A(NC) (0510)                    Page 3 of 15                    Form 3034  1/01

Robert J. Robinson
Brunswick County, NC Register of Deeds    page 4 of 23

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 the Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

Initials: 

VMP ®-6A(NC) (0510)                    Page 4 of 15                    Form 3034  1/01

Robert J. Robinson
Brunswick County, NC Register of Deeds  page 5 of 23

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to

Initials: LDMS

-6A(NC) (0510)                    Page 5 of 15                    Form 3034  1/01

prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any



VMP -6A(NC) (0510)          Page 6 of 15          Initials: _WmS_          Form 3034  1/01

B2331 P0834    10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds    page 7 of 23

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

VMP®-6A(NC) (0510)                     Page 7 of 15                     Initials: WMS                     Form 3034  1/01

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

VMP®-6A(NC) (0510)                          Page 8 of 15                          Initials: WOMS                          Form 3034  1/01

B7531-P0036
Robert J. Robinson
Brunswick County, NC Register of Deeds page 9 of 23

provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material

 

Case 13-00286-8-DMW   Doc 176   Filed 04/01/15   page 16 of 45
B2533 P0637   02-02-2007
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 10 of 23

impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.



B2531 P0630
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 11 of 23

Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects

Initials: WMS

-6A(NC) (0510)                          Page 11 of 15                          Form 3034  1/01

Brunswick County, NC Register of Deeds    page 12 of 23
Robert J. Robinson

Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: WMS

-6A(NC) (0510)                    Page 12 of 15                    Form 3034    1/01

B2531 P0840
01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds  page 13 of 23

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000                % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** Attorneys' fees must be reasonable.

Initials: _W MS_

VMP®-6A(NC) (0510)                    Page 13 of 15                    Form 3034  1/01

01-09-2007
2530 F0041   10:47:39.000
Robert J. Robinson
Brunswick County, NC Register of Deeds  page 14 of 23

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   William M. Soots            -Borrower

_____          _____ (Seal)
                                                                -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower

VMP®-6A(NC) (0510)          Page 14 of 15               Form 3034  1/01

B2531 P0842 01-0X7:37
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds page 15 of 23

**STATE OF NORTH CAROLINA,**                    Brunswick              **County ss:**

    I,    Brenda M. Caudill                                                          ,

a Notary Public of the County of    Brunswick                    , State of North Carolina, do hereby

certify that

        William M. Soots

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described,
personally appeared before me this day, each acknowledging to me that he/she/they voluntarily signed the
foregoing instrument for the purpose stated therein, and in the capacity indicated.

    Witness my hand and official seal this    22nd    day of    December, 2006    .

    My Commission Expires:    2/12/09



_____

Notary Public

**STATE OF NORTH CAROLINA,**                                        **County ss:**

    The foregoing certificate of

a Notary Public of the County of                    , State of

is certified to be correct.

    This                    day of                    .

                         Registrar of Deeds

**By** _____

    Deputy Assistant

VMP-6A(NC) (0510)                    Page 15 of 15                    Initials: WMS                    **Form 3034    1/01**

B2531 P0843    01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds  page 16 of 23

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 22nd  day of  December, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

SunTrust Mortgage, Inc. ,
a Virginia Corporation
(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

301 West Yacht Dr.            , Southport, NC 28461

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE
INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  6.7500       %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the 1st   day of   January, 2014 ,
and on that day every  12th        month thereafter. Each date on which my interest rate
could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER**- Single Family

**VMP-899R** (0510)        **10/05**
Page 1 of 5      Initials: _WMS_
VMP Mortgage Solutions, Inc.
(800)521-7291



**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:

THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U. S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET (LIBOR) AS PUBLISHED IN THE WALL STREET JOURNAL.

The most recent Index figure available as of the date: [X] 45 days [ ] _____ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter                                           percentage points ( 2.2500____%) to the Current Index. The Note Holder will then round the result of this addition to the [X] Nearest [ ] Next Highest [ ] Next Lowest One/Eighth percentage point                    ( 0.125          %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

[X] The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

[X] **Interest-Only Period**

The "Interest-Only Period" is the period from the date of this Note through January, 2016            . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: UMMS

B2531 P0845   01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 18 of 23

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)**

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than  11.7500  %, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than  2.2500  %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than  11.7500  % or less than  2.2500  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  Two  percentage points (  2.0000  %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials:  WMS

VMP-899R (0510)                    Page 3 of 5

B2531 P0846   01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 19 of 23

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _WMS_

VMP-899R (0510)                    Page 4 of 5

B2531 P0847  01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds  page 20 of 23

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
William M. Scott                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

VMP-899R (0510)                          Page 5 of 5


01-02-2007
B2531 P0940 10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 21 of 23

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this        22nd day of      December, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to

SunTrust Mortgage, Inc. ,
a Virginia Corporation                                                              (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

301 West Yacht Dr.                ,Southport,NC 28461
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01**



VMP®-57R (0411)
Page 1 of 3        Initials: UMS
VMP Mortgage Solutions, Inc.
(800)521-7291

B2531 P0849  01-02-2007
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds  page 22 of 23

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _WMS_

VMP-57R (0411)                Page 2 of 3                Form 3170 1/01

B2531 P0650
01-22-2002
10:17:34.000
Robert J. Robinson
Brunswick County, NC Register of Deeds   page 23 of 23

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
                      -Borrower

_____ (Seal)
William M. Soots      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

VMP®-57R (0411)                 Page 3 of 3                 Form 3170 1/01

# SERRA LAW FIRM, PLLC
**104 Price Street**
**Oak Island, NC  28465**
**Phone (910) 201-1327**
**Fax (910) 201-1329**

**Robert K. Serra**

February 2, 2007

Attn: Stephanie Evans
SunTrust Mortgage, Inc.
2601 Iron Gate Drive, Suite 102
Wilmington, NC 28412

RE: Borrower: William M. Soots (unmarried)
    Loan # █████████

Dear Ms. Evans:

In reference to the above, enclosed please find the original recorded Deed of Trust.

You will receive the final title insurance policy directly from the title insurance company.

Thank you for your attention to this matter, and if you have any questions, please call.

Sincerely,

Brenda Caudill
Post Closings

/bc
Enclosure

B3180 P1155 08-02-2011 13:36:49.000 Brenda M. Clemmons
Brunswick County, NC Register of Deeds page 1 of 1

Presenter Suntrust Ret: Mail
Total 14 Rev ______ Int ______
Ck $ 14 Ck #2320 Cash $ 0
Refund: ______ Cash $ ______ Finance ______
☐ Portions of document illegible due to condition of original.
☐ Document contains ... verified by original instrument that cannot be reproduced or copied.

---

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Brunswick, North Carolina
**SELLER'S SERVICING #**[redacted] **"SOOTS"**

**MERS #** [redacted] **SIS #: 1-888-679-6377**

Date of Assignment: July 28th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: SUNTRUST BANK at 303 PEACHTREE STREET N.E., ATLANTA, GA 30318

Executed By: WILLIAM M. SOOTS (UNMARRIED) To: SUNTRUST MORTGAGE, INC.
Date of Deed of Trust: 12/22/2006 Recorded: 01/02/2007 in Book/Reel/Liber: 2531 Page/Folio: 0828 as Instrument No.: N/A In the County of Brunswick, State of North Carolina.

Property Address: 301 WEST YACHT DR., SOUTHPORT, NC 28461

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $440,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
On July 28th, 2011

VANESSA I MOLE NOTARY PUBLIC REG # 255270 MY COMMISSION EXPIRES 9/30/2013 COMMONWEALTH OF VIRGINIA

By: [signature]
**Doyle Mitchell**, Vice-President
**Vice President**

STATE OF Virginia
COUNTY OF Richmond (City)

On July 28th, 2011, before me, Vanessa I Mole, a Notary Public in and for City of Richmond in the State of Virginia, personally appeared Doyle Mitchell, Vice-President being by me duly sworn and duly executed of MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the satisfaction of the above-referenced Deed of Trust.

WITNESS my hand and official seal on July 28th, 2011

[signature]
Notary Expires: 9/30/2013

(This area for notarial seal)

**Prepared By: Paula Jefferson, SUNTRUST MORTGAGE, INC. 1001 SEMMESAVENUE, MERS ADMIN RVW 5003,RICHMOND, VA 23224 800-291-0607**
Recording Requested By: SUNTRUST MORTGAGE, INC.
When Recorded Return To: Paula Jefferson, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUERVW 5003, RICHMOND, VA 23224

[redacted]

EXHIBIT B

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

December 22, 2006                Wilmington                North Carolina
[Date]                               [City]                          [State]

301 West Yacht Dr.              ,Southport,NC 28461
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $440,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
SunTrust Mortgage, Inc.,
a Virginia Corporation
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.7500     %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a monthly                    basis.

## 3. PAYMENTS

*[Please check box for interest-only payments.]*

[X] Beginning on the        1st        day of February,2007   and on the        1st        day of every month thereafter until the        1st        day of January,2016     , I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the        1st     day of each month beginning on   February,2017     .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on                January 1, 2037                        ,
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at SunTrust Mortgage, Inc., P. O. Box 79041,
Baltimore, MD 21279-0041
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,475.00          . This amount may change.

**MULTISTATE ADJUSTABLE RATE NOTE** - Single Family

VMP®-899N (0510)                         10/05
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                    Initials: _____



**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the        1st        day of        January, 2014        , and on that day every    12th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U. S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET (LIBOR) AS PUBLISHED IN THE WALL STREET JOURNAL.

The most recent Index figure available as of the date:  [X] 45 days  [ ]  _____
before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   Two and One / Quarter                      percentage points (      2.2500      %) to the Current Index. The Note Holder will then round the result of this addition to the [X] Nearest   [ ] Next Highest   [ ] Next Lowest One/Eighth percentage point                                          (       0.125      %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

[ ] The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

[X] The "Interest-Only Period" is the period from the date of this Note through  January, 2016        . For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
*(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)*
   [ ] (1) There will be no maximum limit on interest rate changes.
   [ ] (2) The interest rate I am required to pay at the first Change Date will not be greater than                  % or less than            %.
   [ ] (3) My interest rate will never be increased or decreased on any single Change Date by more than                 percentage points (            %) from the rate of interest I have been paying for the preceding period.
   [X] (4) My interest rate will never be greater than      11.7500     %, which is called the "Maximum Rate."
   [X] (5) My interest rate will never be less than      2.2500     %, which is called the "Minimum Rate."
   [ ] (6) My interest rate will never be less than the initial interest rate.
   [X] (7) The interest rate I am required to pay at the first Change Date will not be greater than      11.7500     % or less than      2.2500     %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   Two   percentage points (      2.0000     %) from the rate of interest I have been paying for the preceding period.

Initials: *WMS*

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

☐ My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

☐ If the partial Prepayment is made during the Interest-Only Period, the amount of the monthly payment may decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        4.00        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

 -899N (0510)                          Page 3 of 5                    Initials: _WMS_

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



VMP®-899N (0510)    Page 4 of 5    Initials: _W MS_

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_William M. Soots_ _____ (Seal)
                              -Borrower

_____ (Seal)
William M. Soots               -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                               -Borrower

*[Sign Original Only]*

# AMENDMENT TO
# ADJUSTABLE RATE NOTE

This **AMENDMENT TO ADJUSTABLE RATE NOTE** ("Amendment") is made this  22nd  day of _____December_____, __2006__  and is incorporated into and shall be deemed to amend and supplement that certain Adjustable Rate Note ("Note") of the same date given by the undersigned (the "Borrowers"), as if fully rewritten therein.

The Note is hereby amended as follows:

1. The next to last sentence of the second paragraph of Section 5. **BORROWER'S RIGHT TO PREPAY,** which reads:

   "My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment."

   shall be, and it hereby is, deleted in its entirety and is replaced with the following two sentences:

   "If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of my monthly payment, effective with my first monthly payment after the partial Prepayment, will automatically change to reflect the principal reduction resulting from the partial Prepayment, and this new monthly payment will continue until the next Change Date.  If the partial Prepayment is made during the period when my monthly payment consists of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment."

All remaining terms of the Note not specifically amended herein shall remain in full force and effect as originally written.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Amendment to Adjustable Rate Note.

_____          _____
Borrower                                 Borrower    William M. Soots

_____          _____
Borrower                                 Borrower

_____          _____
Borrower                                 Borrower

_____          _____
Borrower                                 Borrower

Amends Adjustable Rate Note (VMP 899N) 02/03
MW – AMENDMENT TO 899N NOTES CFM
601212 (03/03)

## ALLONGE TO PROMISSORY NOTE

**For the purpose of further endorsement of the following described Note, this Allonge is affixed to and becomes a permanent part of said Note:**

**LOAN NO.** ███████

**Original Principal Balance:  $440,000.00**

**Allonge to Note Dated: DECEMBER 22, 2006**

**Borrower(s) Name(s):   WILLIAM M. SOOTS**

**Property Address:        301 WEST YACHT DR.
                           SOUTHPORT, NC 28461**

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE
SUNTRUST MORTGAGE, INC.**

**By:** _____

**Print/Typed Name: DAVID VAN AKEN**

**Print/Typed Title: VICE PRESIDENT**

## Post-Petition Loan History

**Name:** WILLIAM M SOOTS     **Loan Number:** ███████     **Completed Date:** 3/23/2015

**Case No:** 13-00286     **Filing Date:** 1/14/2013

| Transaction date | Amount received | Date funds applied | Amount applied to principle | Amount applied to interest | Amount applied to escrow | Amount applied to fees | Total Amount Applied | Suspense | Due Date |
|---|---|---|---|---|---|---|---|---|---|
| 1/24/2014 | $ 1,545.66 | | | | | | $ - | $ 1,545.66 | |
| 2/14/2014 | $ 310.97 | | | | | | $ - | $ 1,856.63 | |
| 3/18/2014 | $ 310.97 | | | | | | $ - | $ 2,167.60 | |
| 3/18/2014 | $ 2,469.38 | | | | | | $ - | $ 4,636.98 | |
| 4/15/2014 | $ 310.97 | | | | | | $ - | $ 4,947.95 | |
| 4/15/2014 | $ 1,234.69 | | | | | | $ - | $ 6,182.64 | |
| 5/15/2014 | $ 1,545.66 | | | | | | $ - | $ 7,728.30 | |
| 6/16/2014 | $ 1,234.69 | | | | | | $ - | $ 8,962.99 | |
| 6/16/2014 | $ 310.97 | | | | | | $ - | $ 9,273.96 | |
| 8/15/2014 | $ 1,234.69 | | | | | | $ - | $ 10,508.65 | |
| 8/15/2014 | $ 310.97 | | | | | | $ - | $ 10,819.62 | |
| 8/15/2014 | $ 2,187.00 | 8/20/2014 | $ 276.36 | $ 958.33 | $ 402.57 | | $ 1,637.26 | $ 11,369.36 | 1/1/2014 |
| | | 8/20/2014 | $ 277.51 | $ 957.18 | $ 402.57 | | $ 1,637.26 | $ 9,732.10 | 2/1/2014 |
| | | 8/20/2014 | $ 278.66 | $ 956.03 | $ 402.57 | | $ 1,637.26 | $ 8,094.84 | 3/1/2014 |
| | | 8/20/2014 | $ 279.83 | $ 954.86 | $ 402.57 | | $ 1,637.26 | $ 6,457.58 | 4/1/2014 |
| | | 8/20/2014 | $ 280.99 | $ 953.70 | $ 402.57 | | $ 1,637.26 | $ 4,820.32 | 5/1/2014 |
| | | 8/20/2014 | $ 282.16 | $ 952.53 | $ 402.57 | | $ 1,637.26 | $ 3,183.06 | 6/1/2014 |
| | | 8/20/2014 | $ 283.34 | $ 951.35 | $ 402.57 | | $ 1,637.26 | $ 1,545.80 | 7/1/2014 |
| 9/10/2014 | $ 1,234.69 | | | | | | $ - | $ 2,780.49 | |
| 9/10/2014 | $ 310.97 | 9/11/2014 | $ 284.52 | $ 950.17 | $ 402.57 | | $ 1,637.26 | $ 1,454.20 | 8/1/2014 |
| 10/15/2014 | $ 1,234.69 | | | | | | $ - | $ 2,688.89 | |
| 10/15/2014 | $ 310.97 | 10/15/2014 | $ 285.70 | $ 948.99 | $ 402.57 | | $ 1,637.26 | $ 1,362.60 | 9/1/2014 |

| Transaction date | Amount received | Date funds applied | Amount applied to principle | Amount applied to interest | Amount applied to escrow | Amount applied to fees | Total Amount Applied | Suspense | Due Date |
|---|---|---|---|---|---|---|---|---|---|
| 11/19/2014 | $ 1,234.69 | 11/19/2014 | $ 286.89 | $ 947.80 | $ 402.57 | | $ 1,637.26 | $ 960.03 | 10/1/2014 |
| 11/19/2014 | $ 310.97 | | | | | | $ - | $ 1,271.00 | |
| 12/12/2014 | $ 1,234.69 | | | | | | $ - | $ 2,505.69 | |
| 12/12/2014 | $ 310.97 | 1/5/2015 | $ 288.09 | $ 946.60 | $ 402.57 | | $ 1,637.26 | $ 1,179.40 | 11/1/2014 |
| 1/15/2015 | $ 1,234.69 | | | | | | $ - | $ 2,414.09 | |
| 1/15/2015 | $ 310.97 | 1/15/2015 | $ 289.29 | $ 945.40 | $ 402.57 | | $ 1,637.26 | $ 1,087.80 | 12/1/2014 |
| 2/6/2015 | $ (641.34) | | | | | $ 446.46 | $ - | $ 0.00 | |
| 2/10/2015 | $ 1,234.69 | | | | | | $ - | $ 1,234.69 | |
| 2/10/2015 | $ 310.97 | | | | $ 310.97 | | $ 310.97 | $ 1,234.69 | |
| 3/16/2015 | $ 1,234.69 | | | | | | $ - | $ 2,469.38 | |
| 3/16/2015 | $ 310.97 | 3/18/2015 | $ 290.50 | $ 944.19 | $ 386.47 | | $ 1,621.16 | $ 1,159.19 | 1/1/2015 |
| | | | | | | | $ - | $ 1,159.19 | 2/1/2015 |
| | | | | | | | $ - | $ 1,159.19 | 3/1/2015 |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |
| | | | | | | | $ - | $ 1,159.19 | |

| Transaction date | Amount received | Date funds applied | Amount applied to principle | Amount applied to interest | Amount applied to escrow | Amount applied to fees | Total Amount Applied | Suspense | Due Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | $              - | $   1,159.19 | |
| | | | | | | | $              - | $   1,159.19 | |
| | | | | | | | $              - | $   1,159.19 | |
| | | | | | **Current Post Petition Due Date** | | | 2/1/2015 | |
| | | | | | **Current Suspense Balance** | | | **$1,159.19** | |

## Consent Order #1

**Name:**                                                    **Loan Number:**

**Case No:**                                                  **Filing Date:**

| Transaction date | Amount received | Date funds applied | Amount applied to principle | Amount applied to interest | Amount applied to escrow | Amount applied to fees |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | Current Post Petition |
| | | | | | | Current Suspense B |

**Completed Date:**

**Docket #:**

| Total Amount Applied | Suspense | Due Date |
|---|---|---|
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |

| | | |
|---|---|---|
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | $ - | |
| $ - | | |
| Due Date | | |
| alance | $0.00 | |